## H. W. Leydig, Appellee, v. William M. Glenn, Appellant.

### Gen. No. 5414.

VERDICTS—*when set aside as against the evidence.* A verdict contrary to the clear preponderance of the evidence will be set aside on review, and in this case the judgment rendered upon such verdict was reversed with a finding of fact.

Assumpsit. Appeal from the Circuit Court of Lee county; the Hon. R. S. FARRAND, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed March 16, 1911.

TRUSDELL, SMITH & LEECH, for appellant.

BROOKS & BROOKS, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Appellee recovered a judgment against appellant for $500 for commissions on a land trade made by appellant with a Mrs. Baird. The evidence of appellee shows that appellee is a real estate agent at Dixon, Illinois, and appellant is an attorney and resides at Tribune, Kansas. Appellee was the agent for one Hobbs of Pontiac, Illinois, who owned a section of land near Tribune, Kansas. About December 20, 1904, appellee accompanied Mrs. Baird, who resides near Amboy, and a Mr. Rogers to Tribune, for the purpose of effecting a trade of some land owned by Mrs. Baird in Lee county, Illinois, for the land near Tribune owned by Hobbs. Appellee had a letter from Hobbs introducing him to appellant, and appellant also received a letter from Hobbs by mail asking him to assist appellee in making a trade with Mrs. Baird. Appellee, upon arriving at Tribune, with Mrs. Baird and Rogers, did not find Hobbs in his office. After viewing the land of Hobbs, Leydig obtained a con-

tract from Mrs. Baird, subject to the approval of Hobbs, by which she was to take the Hobbs land on a trade, at a valuation of $1,000 less than Hobbs had authorized. Afterwards appellee took Mrs. Baird to appellant's office and told appellant that he had made a contract for a trade between the parties. Appellant testified that he told appellee out of the presence of Mrs. Baird, that the Hobbs' land was priced too high; that he had land that he would sell much cheaper and give appellee $500 and that appellee told appellant that Hobbs was to pay him $500 and Mrs. Baird was to pay him one dollar an acre; that appellee would turn his customer over to appellant and he could show her his land, and if Hobbs should not approve the contract, he would let him know and then appellant could go and look at Mrs. Baird's land and make a trade and appellant should pay appellee $500.

Appellant's evidence is that the contract appellee made with Mrs. Baird had not been closed, when they had the conversation at his office, and that appellant told appellee he was imposing on Mrs. Baird by trading to her land at $20 an acre that was not worth over $4; that he would not help him make such a trade; that he had a section of as good land adjoining the Hobbs' land, that he would trade to Mrs. Baird for her Illinois land, if her land was worth as much as appellee represented, and pay her $2,000 and give appellee $500; that appellee said he was to get $640 from Hobbs for trading his land, and if appellant would keep still, he could make the trade, and appellant said he would keep still, but he would have nothing to do with helping make the Hobbs trade.

The parties returned to Illinois on December 25, and soon thereafter Hobbs declined to ratify the contract of his agent with Mrs. Baird. Appellee claims he notified appellant by mail of that fact, but appellant denies the receipt of such a letter. On December 28th Mrs. Baird wrote appellant saying that appellee's principal had failed to approve the contract, and asking appel-

lant to come and see her land and make a trade. On January 2, 1905, appellant wrote Mrs. Baird that he would come during the week of January 16th. On December 28, 1904, appellee wrote appellant: "What proposition can you make on the farm traders I had out there and what comm. can you stand. Let me hear from you at once."

Appellant did not reply to the letter of appellee, but came to Lee county on the 14th of January, 1905, in response.to Mrs. Baird's letter, and on the 16th made a trade with her. Appellee does not claim to have negotiated in any way with Mrs. Baird, or to have spoken to her about the trade with appellant, although he sued her and collected a commission from her for that trade, and now seeks a commission from appellant. His testimony is that when he was in Kansas, appellant agreed to pay him a commission of $500 if appellee should trade his land to Mrs. Baird, if the trade with Hobbs should not be approved. On January 16, 1905, appellee wrote to appellant asking him when he could come and see the farm, and offering to take him out and show it to him.

On January 21st appellant answered appellee's letters of December 28 and January 16, and informed him that he had been there two days before his last letter was written, and had closed the deal and telling him that perhaps they could work up some deals, as appellant had other lands in Greely county, Kansas, and that if appellee could transact any business of that kind for him he would be very glad. Mrs. Baird testified that she never talked to appellee about appellant's land before she wrote to appellant; that after appellee and Hobbs came to her place after her return from Kansas, and the deal with Hobbs was off, she wrote to appellant and that she had entered into the contract with appellee for the Hobbs land before she saw appellant at Tribune.

The issue in the case is a question of veracity between appellant and appellee. Appellee testifies that

appellant agreed to give him $500 if appellant should make a deal with Mrs. Baird. Appellant testifies that what he said to appellee was that the appellee was trading to Mrs. Baird land at $20 an acre that was not worth more than $4 and that he could trade the same quantity of land for Mrs. Baird's land, if her land was as good as appellee said it was, and pay Mrs. Baird $2,000 boot money and give appellee $500, and that appellant's reply was, that he was to get $640 from Hobbs and if appellant would keep still he could make the Hobbs trade, and appellant said he would not interfere. If appellee had a contract with appellant by which he was to receive $500 he has made no explanation of his letter of December 28th in which he asks appellant for a proposition on the farm traders and the amount of commission appellant could stand. The circumstances all corroborate appellant and the letter written by appellee asking what commission appellant would pay is such an impeachment of his testimony that he had a contract for $500 commission that his evidence is rendered unworthy of credit. The clear preponderance of the evidence shows that appellee had no such contract as he claims and he does not seek to recover upon any other theory. The judgment is therefore reversed.

*Reversed.*

FINDING OF FACT: The appellee had no contract for commissions with appellant.